Welcome Board ballot  10 secs, 1 second 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 29 30 31 32 33 34 35 36 37 38 39 40 All rise United States Court of Appeals of the 9th Circuit and that's it Please be seated, good morning Before we get started Judge Nelson and I would like once again to acknowledge the service to our court of Judge Myron Bright from the 8th Circuit He's been sitting with us a few days this week and we certainly appreciate your help Well thank you, even though you may not think the weather is so great here It's snowing up in Fargo Secondly by way of advice particularly to counsel for appellants please remember that our clocks work from the top down so they'll show from 10 minutes down or 20 minutes down So if you want to have time for rebuttal you're just going to have to sit down with some time remaining on the clock because we're not going to dispense extra minutes unless it's appropriate to equalize time taken in conversation with the counsel for appellant So having said those things we'll hear argument in the first matter on calendar which is Miller v. Yuba County Mr. McKenzie Thank you May it please the court I am Roderick McKenzie I represent the plaintiffs and appellants herein who are present in court I initially am going to attempt to reserve a few minutes for rebuttal The issue appears, the primary issue appears in this case to be a question of whether there's a deprivation of a constitutional right I think it's there's probably no more primary right in our history and our tradition than the privacy and family autonomy right They are protectable interests under the constitution One of the cases I cited in my brief was Boyne which is an 8th Circuit case It refers and cites Smith v. Organization of Foster Families and the Moore v. East Cleveland which deals a lot with the history and tradition that has developed our substantive due process rights and rights of association and privacy rights between a family The question may arise here whether there is a family when we have grandparents and it's not just grandparents but there's foster parents as well and if you follow the Smith At the time, what you had was grandparents who had of course had the grandchildren stay with them for a fairly long period of time, but they were in custody of a juvenile court and so it's not like Moore and it's no authority actually would confer a constitutional right on them in that capacity, does it? Yes, I think it does confer a constitutional right substantive due process until you have a family following the Smith v. Foster Families You have a foster situation They are in effect foster parents as well as being grandparents and they had this long term relationship with the children which started at a very early age and I think you developed a family anomaly there a family unit which is entitled to the protection of the due process clause. Well, let me ask you this question. At the time that you claim that you have a due process violation my colleague points out the children were wards of the state and there was the interference with the custody now but the notice about the plaintiff Charlie Miller being a possible abuser of children had not gone in and that's one of the main complaints here now by on September 3rd the name was resubmitted September 3rd, 1998 at that time the petition for guardianship was pending and the family had gotten custody in fact of the children and they were at least at that point I don't remember if they were de facto parents or not They were, your honor Alright, so at that point when the name went in there was no interference with the custody in any way by county because they were in, I think, what is it, Suffolk County? Well, there's Southern County and I should point out Well, just answer the question the children they were now in a different county than the defendant here They were in Alaska Yeah, but when did they come out of Alaska? Pardon? When did the grandparents get them out of Alaska? As soon as they got the guardianship order from the Southern County Court then they went to Alaska That was after September 3rd Let me get the September 3rd Well, that's when the name was resubmitted on the suspect list 1998 guardianship grant in October of 1998 and they were at that point in time the children were in Alaska and as soon as the grant of guardianship was entered then by writ of assistance of the Alaska Superior Court they got the children who were in the custody of CPS in Alaska Well, the fact of the matter is there was never any custody interfered with since the Millers got guardianship and formal custody of the children Isn't that correct? After they got guardianship there was no interference with custody There has been no interference since that time and the earlier interference was really you call them de facto parents but I don't know that they attained that status legally Well, I think under the California statute of juvenile court statute they are in fact they are de facto parents I cite that in the brief the statute which makes them de facto parents under the law As I understand it, that gives them standing to appear in court That's correct but confers no other rights apart from standing Basically that's basically correct Your Honor I think I've utilized my time If you wish to save your remaining time that's fine Thank you, Your Honor Good morning Time flies when someone else is speaking I of course had my words planned out but may it please the court I'd like to address the timeline that you all were just discussing with opposing counsel I'm Jennifer Duggan and I represent the appellees and defendants in this matter The timeline that Your Honors have been discussing with counsel is critical in this case During the time that the children were placed with the Millers before any of the abuse allegations there obviously can be no deprivation There was no abuse allegation There was no placement on the Casey and they had custody of the children When the mother returned in September 1995 she was granted visitation The mother petitioned for the children to be returned to her in 1996 and in August 1996 reunification services were again granted to her She had been in and out of the children's lives and they had been with the Millers for a good bit of that time but reunification services were granted to the mother at that time At that point in time, the children were a ward of the juvenile court and the mother had a significant parental, natural parent interest in those children When these allegations of abuse arose those rights are paramount and those rights are paramount to any other rights that any other peripheral family members or other alleged abusers, the Millers aren't the only ones who were denied visitation during that time All of the other men in the children's lives were denied visitation during that time as well while the abuse allegations were investigated Let me ask a question about you cited the Troxell case In the Troxell case that involved a tension between the rights of the natural parents and grandparents Now here, the Millers were not infringing upon the rights of the children's mother but were in fact themselves acting as de facto parents Doesn't that distinguish this from the Troxell case? Well I think this case is absolutely distinguished from cases where the parents have a right and the grandparents have a situation where they have living in the home or have other de facto parent type status Of course when I didn't write the brief I can't cite each case off the top of my head but I see the Troxell brief cited in the Troxell case cited in our brief and it does stand for the proposition that it is well established that parents have a liberty interest in to the grandparents so I hope that our citing it in the brief didn't inappropriately lead the court to believe That case, it seemed to me is clearly distinguishable here is parents versus grandparents and here it's both parents and grandparents asserting a parental right And I think that was the intent for which we cited is to make the distinguishment between the fact that parents have certain rights and grandparents don't. Okay, thank you The first attempt as Justice Bright pointed out to place Mr. Miller on the case he was in October 1996 that as we know was a failed attempt due to improper documentation on the form that was submitted The visitation ceased then around that time in October 1996 and they were re-granted visitation in May 1997 The Sutter County actually took over in February 1997 so there was a three month period where Yuba County really had no involvement with it at all but the visitation continued to cease and then visitation was again granted in May 1997 so the deprivation of visitation with the children was a seven month period limited from October 1996 to May 1997 During that time there was no placement of Mr. Miller on the case he was due to an error and it wasn't on there so this case is fairly unique in its circumstances in that even if the court were to find the grandparents had some sort of constitutional standard that rose to the level of a liberty and interest protection that would meet the plus standard or at least a tribal issue of fact for the plus standard for the prior fact to determine in this case that deprivation was not at the same time as the alleged stigma and I would think there would have to be a nexus between the two. There would have to be a plus case under the Paul V. Davis standard between the alleged stigma and the alleged deprivation and here we just simply due to the timeline do not have that. Let me ask you a question about this so called stigma as the appellant points out both Sutter County and the police in Yuba County seem to have exonerated Charlie Miller obviously and his name still appears on this list and the statute doesn't provide how to get it off. Is there any, I know this is apart from this case, but is there a way that he can get this off through the estate processes? During the process as it exists for the purposes of this case there is no way for him to remove his name other than to, you know, there is no procedure that would ensure that it would happen. He could certainly make those requests and see if he could get authority. It would have to be done administratively and he would have to have someone supportive of that. There is no statutory remedy for him to remove his name. Administrative mandamus from the administrative determination. I would assume that would be a good start. Unfortunately the state of California was dismissed from this case very early on so that is not a basis from which even if it were to happen. I just wondered what the status was of a possible remedy. I think your brief alludes to that there might be but that's apart from the merits. It's apart from the merits of this case and it's certainly not a basis from which my clients could form the basis of liability. The district court found a tribal issue of fact with respect to the fact that the claims cited by plaintiff demonstrating the stigma are really unnecessary in this case. The entire analysis before you judges is really whether or not plaintiffs and appellants have adequately articulated the plus standard. Parents are simply not grandparents who have a constitutional interest the same way or grandparents are simply not granted the same constitutional protections that parents are. Particularly where it's here when the alleged abuse was taking place the parent was involved, the parent did in consultation with county authorities make the determination that it was not appropriate for visitation to continue at that time and therefore the miller's interest during that time period were directly adverse and contrary to that of the natural mother and the interest of the natural mother and the interest of the state in protecting the children from any potential further abuse are paramount and override any interest that even if the grandparents did have a constitutional right or liberty that was deprived, those other interests are overriding at that point in time. So if we don't have any further questions, I'll go ahead and not sit down. Thank you very much. Thank you. Mr. McKenzie? Initially I'd like to point out that Judge Bryce said Sutter County, Yuba City is the county seat of Sutter County. Marysville is the county seat of Sutter County. It was the Sutter Police, if you will, and Sutter CPS, not Yuba. It was Yuba City Police, but that is in Sutter County. I would like to also point out to Justice Bryan that approximately a year ago the legislature appointed a task force to review the due process, the reporting statute and they have been meeting the past years on numerous occasions and have actually drafted a proposed amendment to the penal code to satisfy due process concerns with regard to the reporting statute. And I think that is significant to my client's deprivation of procedural due process because what you have here is the county, the government officials using a state statute, the state statute to deprive him of any visitation, any custody, any contact with the children which he has had for years. And he has no remedy. He has no hearing, no right to present evidence. He actually got custody after he was listed. Only after it was switched to Sutter County and Sutter County conducted... Was he? The point is he was not actually deprived of... Yes. Between October and May he had... Not because of the listing. Yes, because of... Because he was accused, yes. Because he's accused, yes, but not because of the listing. Well, I think that's even more significant, Your Honor, because when the guardianship is pending in Sutter County and after post the conclusion by the police department and Sutter County CPS that there was no basis, then it's at that point that the millers go to Yuba County and say, look, if you've got anything in your report, we want him out. And what do they do? Despite the fact that they've been exonerated, they report him. And say, we tried to do it before, which is there was no reason at that point to try to attempt to deprive him of the guardianship, he and his wife of the guardianship, which they were seeking. The matter had already been cleared up that there had been no abuse as far as the authorities were concerned. That's an abuse and he had no due process to remedy that. And he's still on the list and he will be on the list for 10 years. Thank you, Your Honor. All right, thank you. Counsel, the matter just argued will be submitted and we'll now hear argument in Feidelberg v. Merrill Lynch.
judges: Bright, Dw Nelson, Rymer